**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Charles Michael KISSICK, Defendant–Appellant.**

No. 95–6055.

United States Court of Appeals, Tenth Circuit.

Nov. 6, 1995.

Charles Michael Kissick, pro se.

Patrick M. Ryan, United States Attorney, Vicki Zemp Behenna, Assistant United States Attorney, Oklahoma City, Oklahoma, on the brief, for Plaintiff–Appellee.

Before SEYMOUR, Chief Judge, McKAY, and HENRY, Circuit Judges.[*]

HENRY, Circuit Judge.

Petitioner Charles Michael Kissick appeals the district court's denial of his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, we vacate the district court's decision and remand for further proceedings.

## I. BACKGROUND

In February 1989, a jury convicted Mr. Kissick of fourteen counts of various drug charges, including possession of cocaine with the intent to distribute, distribution of cocaine, and conspiracy to commit those offenses. Following his conviction, the United States Probation Office prepared a presentence report that classified Mr. Kissick as a career offender pursuant to § 4B1.1 of the United States Sentencing Guidelines (USSG) on the basis of three related Oklahoma convictions for unlawful distribution of a controlled dangerous substance in 1971 and a 1985 conviction in Florida for possession of cocaine. Rec. vol. VIII, pt. B (presentence report). In light of these prior convictions,

---

[*] After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

the presentence report assigned Mr. Kissick a criminal history category of VI. *Id.* pt. C. The report also assigned Mr. Kissick a total offense level of 38, based in part on the amount of cocaine that he had distributed and on the fact that brown powder in plastic bags in Mr. Kissick's possession when he was arrested was subsequently determined to be cocaine base. The report concluded, "After cocaine base is converted to cocaine equivalent, the total amount attributable to the defendant is over 5 kilos." *Id.* pt. A, ¶ 19.

Mr. Kissick objected to certain sections of the presentence report, and, on April 17, 1989, the district court held a sentencing hearing. At the conclusion of the hearing, the court found that certain testimony regarding quantities of cocaine allegedly distributed by Mr. Kissick was not credible. It therefore reduced the total amount of cocaine attributable to him.

Based on these findings, the court also reduced Mr. Kissick's offense level to 36. However, the court continued to assign Mr. Kissick a criminal history category of VI. Noting that the guidelines range was 324 to 405 months, the court sentenced Mr. Kissick to 328 months imprisonment for count 1 and counts 4 through 14. As to counts 2 and 3 (which alleged conduct before the effective date of the guidelines) the court imposed sentences of 10 years incarceration and ordered these terms to run concurrently with the sentences on the other counts. The court also imposed a 6 year term of special parole following Mr. Kissick's release from prison. Observing that application of the guidelines was harsh, the court stated that it sentenced Mr. Kissick at the lower end of the guidelines range, in part because the 1971 Oklahoma County convictions occurred when Mr. Kissick was 18 and serious punishment had not been imposed for those offenses.

On direct appeal, this Court affirmed Mr. Kissick's conviction and sentence. *See United States v. Kissick,* No. 89–6143 (10th Cir. May 30, 1990) (per curiam). Mr. Kissick then filed a motion to reduce his sentence, which the district court denied in February 1991.

In August 1994, Mr. Kissick filed the Section 2255 motion that is the subject of this appeal. He advanced two claims: (1) that he was entitled to resentencing under USSG Amendment 487, which became effective on November 1, 1993; and (2) that he should not have been sentenced as a career offender. The district court rejected both arguments, concluding that Amendment 487 should be applied prospectively and that Mr. Kissick's career offender challenge "was raised and argued by defendant at his sentencing and not pursued on appeal. The Court finds no basis to reconsider it now." Rec. supp. vol. I, doc. 135, at 5.

## II. DISCUSSION

The district court's interpretation of the guidelines raises legal questions that we review de novo. *United States v. Flower,* 29 F.3d 530, 534 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 939, 130 L.Ed.2d 884 (1995). We also engage in de novo review of the district court's rulings on legal questions in Section 2255 proceedings. *See United States v. Cook,* 49 F.3d 663, 665 (10th Cir.1995). Findings of fact made by the district court in applying the guidelines must be upheld unless they are clearly erroneous. *United States v. Bauer,* 995 F.2d 182, 183 (10th Cir.1993).

### A. Effect of Amendment 487

After Mr. Kissick's trial, his direct appeal, and the denial of his motion for reduction of sentence under Fed.R.Crim.P. 35, the Sentencing Commission amended USSG § 2D1.1(c) to resolve an inter-circuit conflict regarding the definition of "cocaine base":

> Section 2D1.1(c) is amended in the notes following the Drug Quantity Table by inserting the following additional paragraph as the third paragraph.
>
> " 'Cocaine base,' for the purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.".

This amendment provides that, for purposes of the guidelines, "cocaine base" means "crack." The amendment address-

es an inter-circuit conflict. *Compare, e.g., United States v. Shaw,* 936 F.2d 412 (9th Cir.1991) (cocaine base means crack) *with United States v. Jackson,* 968 F.2d 158 (2d Cir) (cocaine base has a scientific, chemical definition that is more inclusive than crack), *cert. denied,* [— U.S. —] 113 S.Ct. 664 [121 L.Ed.2d 589] (1992). Under this amendment, forms of cocaine base other than crack (*e.g.,* coca paste, an intermediate step in the processing of coca leaves into cocaine hydrochloride, scientifically is a base form of cocaine, but it is not crack) will be treated as cocaine. **The effective date of this amendment is November 1, 1993.**

USSG App. C, Amend. 487 (November 1, 1993).

Mr. Kissick argues that this amendment should be applied retroactively to allow his sentence to be recalculated. He maintains that because the substance in his possession when he was arrested was "cocaine base" (in the broader sense) rather than crack, the substance should be treated as cocaine under Amendment 487 for purposes of making the guidelines calculation. Under Mr. Kissick's theory, the substance found in his possession should be treated as 46.3 grams of cocaine rather than the exponentially greater quantity used by the sentencing court after it employed a multiplier to convert the amount of cocaine base into a corresponding amount of cocaine. The district court rejected Mr. Kissick's argument, characterizing Amendment 487 as a substantive change in the guidelines that should be applied prospectively.

As a general rule, it is the guidelines provisions in effect at the time of sentencing that

must be applied by the district court. USSG § 1B1.11(a); *United States v. Gerber,* 24 F.3d 93, 95 (10th Cir.1994); *United States v. Camacho,* 40 F.3d 349, 354 (11th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1810, 131 L.Ed.2d 735 (1995).[1] However, Congress has granted the Sentencing Commission the authority to determine whether and to what extent guidelines amendments that reduce sentences will be given retroactive effect. *See* 28 U.S.C. § 994(a); *Braxton v. United States,* 500 U.S. 344, 111 S.Ct. 1854, 114 L.Ed.2d 385 (1991). Pursuant to 28 U.S.C. § 994, the Commission has promulgated USSG § 1B1.10, which lists specific amendments that sentencing courts may apply retroactively to reduce a defendant's sentence.[2]

Additionally, even if an amendment is not listed in USSG § 1B1.10, sentencing and reviewing courts may still give retroactive effect to amendments that are "clarifying (as opposed to substantive)." *United States v. Capers,* 61 F.3d 1100, 1109 (4th Cir.1995). The distinction between clarifying and substantive amendments is often difficult to draw. "Where the line is to be drawn may well reflect not only language and intent but also implicit judgments as to the Sentencing Commission's function and the role of guideline commentary." *Isabel v. United States,* 980 F.2d 60, 62 (1st Cir.1992). A variety of factors may be considered, including the Commission's characterization of the amendment, whether the amendment changes the text of the guidelines or merely the accompanying commentary, and whether the amendment alters the controlling pre-amendment interpretation of the guideline at issue. *See Capers,* 61 F.3d at 1109–10; *Gerber,* 24 F.3d

---

**1.** However, the guidelines also establish an exception to this rule:

> If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.

USSG § 1B1.11(b)(1).

**2.** USSG § 1B1.10 states, in part:

> (a) Where a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the

Guidelines Manual listed in subsection (c) below, a reduction in the defendant's term of imprisonment is authorized under 18 U.S.C. § 3582(c)(2). If none of the amendments listed in subsection (c) is applicable, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) is not consistent with this policy statement and thus is not authorized

> . . . .

> (c) Amendments covered by this policy statement are listed in Appendix C as follows: 126, 130, 156, 176, 269, 329, 341, 371, 379, 380, 433, 454, 461, 484, 488, 490, 499, and 506.

at 96–97. Because Amendment 487 is not listed in USSG § 1B1.10 as having retroactive effect, we must apply these factors to determine whether it is clarifying or substantive, and whether, as a result, it may be applied retroactively.

With regard to the third factor, this Circuit has held that an amendment that effectively overrules existing precedent should be classified as substantive rather than clarifying. *United States v. Saucedo,* 950 F.2d 1508, 1514 (10th Cir.1991), *overruled on other grounds, Stinson v. United States,* —— U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993); *see also United States v. Mondaine,* 956 F.2d 939, 942 (10th Cir.1992) ("In *Saucedo,* we refused to accept the Commission's characterization of an amendment as merely clarifying because we were required to overrule precedent construing the guideline in order to interpret it consistently with the amended commentary.").

With regard to the issue raised by Mr. Kissick—whether the term "cocaine base," as used in USSG § 2D1.1(c), includes substances other than crack—our Circuit had reached a conclusion contrary to the Sentencing Commission's interpretation in Amendment 487. In *United States v. Angulo–Lopez,* 7 F.3d 1506, 1511 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1563, 128 L.Ed.2d 209 (1994), we concluded that "it is proper to sentence a defendant under the drug quantity table for cocaine base if the record indicates that the defendant intended to transform powdered cocaine into cocaine base." The defendant in *Angulo–Lopez* was found to have possessed a substance other than crack, but was sentenced under the guidelines provisions for "cocaine base."

Significantly, we issued *Angulo–Lopez* on October 26, 1993—only a few days before the effective date of Amendment 487. Amendment 487 defines the term "cocaine base" more narrowly than *Angulo–Lopez,* and thereby changes the law of this Circuit. Amendment 487 thus constitutes a substantive amendment to the guidelines. Therefore, the district court properly concluded that Mr. Kissick was not entitled to a retroactive application of Amendment 487.

*B. Classification as a Career Offender*

■ Mr. Kissick also argues that he was improperly classified as a "career offender" under USSG §§ 4B1.1 and 4B1.2. In particular, he focuses on his 1986 conviction for possession of cocaine and argues that it does not constitute a "controlled substance offense" as that term is used in § 4B1.2.

Under USSG § 4B1.1, a defendant is classified as a career offender if: (1) he is at least 18 years old at the time of the instant offense; (2) the instant offense is a felony that is either a "crime of violence" or a "controlled substance offense"; and (3) he has at least two prior felony convictions for either a "crime of violence" or a "controlled substance offense."

USSG § 4B1.2 defines the terms "crime of violence" and "controlled substance offense." At the time of Mr. Kissick's sentencing, USSG § 4B1.2 defined a "controlled substance offense" as "an offense identified in 21 U.S.C. §§ 841, 845b, 856, 952(a), 955, 955(a), 959; and similar offenses." *See* USSG App. C, Amend. 49 (effective January 15, 1988), Amend. 268 (effective November 1, 1989). Accompanying application notes to USSG § 4B1.1 supplied a more specific definition of "controlled substance offense":

> "Controlled substance offense" includes any federal or state offense that is substantially similar to any of those listed in subsection (2) of the guideline. These offenses include manufacturing, importing, distributing, dispensing, or possessing with intent to manufacture, import, distribute, or dispense, a controlled substance (or a counterfeit substance). This definition also includes aiding and abetting, conspiring, or attempting to commit such offenses, and other offenses that are substantially equivalent to the offenses listed.

USSG App. C, Amend. 268.

Mr. Kissick maintains that the mere possession of cocaine does not constitute a "controlled substance offense" under these guidelines definitions of that phrase. His argument is supported by the provisions of the statutes to which USSG § 4B1.2 refers. All of them involve more that mere possession *See* 21 U.S.C. § 841(a) (manufacturing, dis-

tributing, or dispensing controlled substances and possessing controlled substances with the intent to commit these acts); § 845b (now 861) (employing juveniles to commit controlled substance violations); § 856 (establishing manufacturing operations); § 952(a) (importing controlled substances); § 955 (possessing controlled substances on board a vessel arriving in or departing from the United States); § 955a (manufacturing, distributing, or possessing controlled substances with the intent to manufacture or distribute on board vessels); § 959 (manufacturing or distributing for purposes of unlawful importation).

Moreover, decisions applying the version of § 4B1.2 under which Mr. Kissick was sentenced have noted that "[s]imple possession, as defined by 18 U.S.C. § 844 [sic], is not included in the list of crimes that constitute a controlled substance offense under the Career Offender provision." *Hansen v. United States Parole Comm'n,* 904 F.2d 306, 310 (5th Cir.1990), *cert. denied,* 498 U.S. 1052, 111 S.Ct. 765, 112 L.Ed.2d 784 (1991). Decisions applying subsequent versions of USSG § 4B1.2 have also concluded that simple possession is not a "controlled substance offense." *See United States v. Galloway,* 937 F.2d 542, 549 (10th Cir.1991) (noting government concession that "controlled substance offense" under § 4B1.2 does not include mere possession); *United States v. Gaitan,* 954 F.2d 1005, 1011 (5th Cir.1992) (noting that "controlled substance offense" does not include mere possession).[3]

▉ Nevertheless, as the government notes and he concedes, Mr. Kissick did not raise this issue at sentencing or in his direct appeal.[4] As a result, Mr. Kissick may only

pursue this issue in a Section 2255 proceeding if he can show cause for his failure to raise it and prejudice resulting from that failure. *United States v. Cook,* 45 F.3d 388, 392 (10th Cir.1995). Mr. Kissick attempts to establish cause by arguing that his failure to challenge the Florida conviction resulted from his attorney's neglect.

▉ In fact, a defendant may establish cause for failing to raise a claim by demonstrating that he received ineffective assistance of counsel. *Id.* (citing *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). In order to establish ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was constitutionally deficient; and (2) that this deficient performance was prejudicial. *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).

▉ Under the first prong of the *Strickland* test, a defendant must establish "that counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Under this standard, "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. at 2065. The court must avoid the "distorting effects of hindsight," and the defendant must overcome the presumption that the attorney's action constituted sound trial strategy. *Id.* Nevertheless, a defendant is entitled to "the 'exercise [of] the skill, judgment and diligence of a reasonably competent defense attorney.'" *United States v. Burney,* 756 F.2d 787, 790 (10th Cir.1985) (quoting

---

3. USSG § 4B1.2(2) currently defines a "controlled substance offense" as "an offense under a federal or state law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." Again, simple possession is not included.

4. As we have stated, the district court concluded that Mr. Kissick's argument that he was improperly classified as a career offender was raised at sentencing. Rec. vol. doc. 135, at 5. Our review of the record does not support this conclusion.

Nowhere in his objections to the presentence report did Mr. Kissick challenge his career offender status. At the sentencing hearing, his attorney argued that in light of his young age at the time of the Oklahoma County convictions, Mr. Kissick's criminal history score "over-repre-sent[ed] the seriousness of this defendant's past criminal history." Rec. vol. VI, at 49. For this reason, Mr. Kissick's attorney requested the district court to depart downward from the guidelines. However, in no way did Mr. Kissick's attorney challenge the use of the Florida conviction to establish Mr. Kissick's career offender status under USSG §§ 4B1.1 and 4B1.2.

*Dyer v. Crisp,* 613 F.2d 275, 278 (10th Cir.) (en banc), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980)) (alteration in original).

 Under the second prong of the *Strickland* test, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. However, a court may not set aside a conviction or a sentence solely because the outcome would have been different absent counsel's deficient performance. *Lockhart v. Fretwell,* 506 U.S. 364, ──── ────, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993). Instead, in order to establish the required prejudice, a defendant must demonstrate that counsel's deficient performance rendered the proceeding "fundamentally unfair or unreliable." *Id.* at ────, 113 S.Ct. at 842.

We have applied the *Strickland* test in various circumstances to conclude that an attorney's performance was constitutionally deficient and prejudicial. In *Cook,* we held that an attorney who had failed to raise an issue on appeal that was (in Judge Easterbrook's colorful parlance) "a dead-bang winner" had provided ineffective assistance under *Strickland. Cook,* 45 F.3d at 395 (quoting *Page v. United States,* 884 F.2d 300, 302 (7th Cir.1989)); *see also Banks v. Reynolds,* 54 F.3d 1508, 1515–16 (10th Cir.1995) (holding that attorney who had failed to raise clearly meritorious issues on appeal provided ineffective assistance). Similarly, in *Baker v. Kaiser,* 929 F.2d 1495, 1499–1500 (10th Cir. 1991), we concluded that the representation provided by an attorney who failed to ascertain whether a defendant wanted to appeal a conviction or who failed to discuss the merits of the appeal with the defendant was constitutionally deficient. Finally, in *Osborn v. Shillinger,* 861 F.2d 612, 626–31 (10th Cir. 1988), we affirmed a district court's finding that an attorney who failed to discover mitigating evidence to present at a capital sentencing proceeding provided ineffective assistance under *Strickland.*

Several other courts of appeals have applied *Strickland* in determining whether the failure to challenge findings in a presentence report constituted ineffective assistance of counsel. For example, in *Durrive v. United States,* 4 F.3d 548 (7th Cir.1993), the Seventh Circuit concluded that an attorney's failure to object to the sentencing court's disregard of various provisions of Fed.R.Crim.P. 32 did not render his performance constitutionally deficient. The *Durrive* court noted that, according to the defendant, adequate performance by his counsel at sentencing would have only reduced the offense level from 28 to 26. Because the corresponding guidelines range of sentences was 87 to 108 months, the defendant's sentence would have been at least 12 months less than the 120 months that he actually received. The Seventh Circuit found this potential reduction in the defendant's sentence insufficient to establish prejudice under *Strickland.* However, the court added that "grave errors" by the sentencing court and counsel might be sufficiently prejudicial to meet the *Strickland* standard. *Durrive,* 4 F.3d at 551. "[A]n error that produces a large effect on the sentence could be condemned on this basis." *Id.*

In *Spriggs v. Collins,* 993 F.2d 85 (5th Cir.1993) (per curiam), the Fifth Circuit also concluded that an attorney's failure to object to part of a presentence report did not satisfy the *Strickland* test for prejudice. The court observed that the inaccurate sections of the report were "relatively short and non-specific" and that the rest of the report (which was accurate) was sufficient to support the defendant's sentence. *Spriggs,* 993 F.2d at 90. The Fifth Circuit held that under the *Strickland* prejudice prong, "a court must determine whether there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been *significantly* less harsh." *Id.* at 88. Importantly, the *Spriggs* added that "one foreseeable exception to this requirement would be when a deficiency by counsel resulted in a specific, demonstrable enhancement in sentencing—*such as an automatic increase for a 'career' offender* or an enhancement for use of a handgun during a felony—which would have not occurred but for counsel's error." *Id.* at 89 n. 4 (emphasis added); *see also United States v. Stevens,*

851 F.2d 140, 145 (6th Cir.1988) (concluding that attorney's failure to advise the court of error in presentence report might constitute deficient performance under *Strickland*); *United States v. Rone,* 743 F.2d 1169, 1173 n. 3 (7th Cir.1984) (same); *Smith v. United States,* 871 F.Supp. 251, 255 (E.D.Va.1994) ("While courts are properly deferential to attorneys' discretion, failure to raise an objection to a clear and indisputable error in the [presentence report] is not within the broad range of performance that can be deemed reasonable.").

In the instant case, the record supports Mr. Kissick's argument that his failure to challenge the Florida conviction at sentencing resulted from his attorney's ineffective representation. As to the first element under *Strickland*—counsel's deficient performance—it appears from the presentence report that the Florida conviction included none of the elements beyond simple possession necessary to establish a "controlled substance offense" under USSG §§ 4B1.1 and 4B1.2. Just as in *Banks, Cook, Baker,* and the other cases in which we have concluded that counsel's performance was constitutionally deficient, an objection to the government's use of the Florida conviction to classify Mr. Kissick as a career offender appears to have been a "dead-bang winner." An attorney's failure to challenge the use of a prior conviction to classify the defendant as a career offender when that prior conviction is facially insufficient to satisfy the definition of a "controlled substance offense" under USSG § 4B1.2 therefore constitutes deficient performance under *Strickland. See Cabello v. United States,* 884 F.Supp. 298, 303 (N.D.Ind.1995) (holding that counsel's failure to object to use of possession of cocaine charge to support career offender status was "ineffective" and "subpar").

As to the second *Strickland* element, the prejudice resulting from the failure to challenge a career offender classification is clear. With regard to Mr. Kissick, the applicable guideline established a range of sentences between 324 and 405 months for career offenders. If he had not been classified as a career offender, the presentence report indicates, Mr. Kissick would have been assigned a criminal history score of IV, and the applicable range of sentences would have been 262 to 327 months. *See* USSG Ch. 5, pt. A (sentencing table); Rec. vol. VIII, at 15. Under the reasoning of the Seventh Circuit in *Durrive* and the Fifth Circuit in *Spriggs,* such a significant increase in the range of sentences that Mr. Kissick could receive constitutes prejudice under *Strickland*—particularly when the sentencing judge characterized the applicable guidelines provisions as harsh and sentenced Mr. Kissick at the lower end of the guidelines range. Following *Durrive* and *Spriggs,* we conclude that when counsel's constitutionally deficient performance results in the defendant's improper classification as a career offender and when that improper classification results in a significantly greater sentence, the prejudice element of *Strickland* is satisfied. In conjunction with constitutionally deficient performance by counsel, such prejudice meets the standard for procedural default. *See generally Banks,* 54 F.3d at 1516; *Cook,* 45 F.3d at 395.[5]

Nevertheless, the record before us does not allow a definitive conclusion as to the performance of Mr. Kissick's counsel and the impact of that performance on the sentence received by Mr. Kissick. Aside from a brief description in the presentence report, we can find no documents in the record concerning Mr. Kissick's Florida conviction. It is therefore conceivable that, in spite of the report's

---

**5.** Some courts have held that the improper classification of a defendant as a career offender may constitute plain error. The Second Circuit has concluded that the sentencing court's reliance on an inaccurate date for a prior conviction constituted plain error when the mistake resulted in the defendant being classified as a career offender. *See United States v. Moore,* 968 F.2d 216, 226 n. 3 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 480, 121 L.Ed.2d 385 (1992); *see also United States v. Ebertowski,* 896 F.2d 906, 907–08 (5th Cir.1990) (placing defendant in incorrect criminal history category constitutes plain error). *But cf. United States v. Calverley,* 37 F.3d 160, 164 (5th Cir.1994) (en banc) (concluding that sentencing court did not commit plain error in treating possession of a listed chemical with the intent to manufacture as a predicate offense under USSG § 4B1.1 because of differing interpretations of the guidelines), *cert. denied,* —— U.S. ——, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995).

description of the conviction as involving "Possession of Cocaine," Rec. vol. VIII, pt. B, at ¶ 33, Mr. Kissick was actually convicted of an offense that contained elements other than mere possession and that may have satisfied the definition of a "controlled substance offense" under USSG § 4B1.2. Because of the significant impact of the Florida conviction on sentencing and because the nature of the Florida conviction was not specifically addressed by the district court in either the initial sentencing or the Section 2255 proceedings, we conclude that this matter should be remanded to the district court.

On remand, the district court should determine whether the Florida conviction was for mere possession of cocaine or whether it involved the additional elements required under USSG § 4B1.2 to constitute a "controlled substance offense." [6] If the Florida conviction was for mere possession, then Mr. Kissick should not have been sentenced as a career offender. Moreover, Mr. Kissick's attorney's failure to challenge his career offender status in the initial sentencing proceedings will satisfy the cause and prejudice standard for procedural default and Mr. Kissick will be entitled to resentencing. Alternatively, if the government can establish on remand that the Florida conviction constitutes a "controlled substance offense" under USSG § 4B1.2, then Mr. Kissick will not be entitled to resentencing. As to any resentencing, we note that the district court "will be governed by the guidelines in effect at the time of resentence." *United States v. Ziegler*, 39 F.3d 1058, 1063–64 (10th Cir.1994).

Accordingly, the district court's order denying Mr. Kissick's motion to vacate, modify, or set aside his sentence is VACATED, and the case is REMANDED for proceedings consistent with this opinion.

---

**6.** We note that according to the presentence report Mr. Kissick was initially charged in the Florida proceeding with trafficking in cocaine. However, in determining whether a defendant is a career offender, it is the offense for which he is actually convicted that is controlling. *See United States v. Garcia,* 42 F.3d 573, 576 (10th Cir. 1994).