PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 7/26/96**

TENTH CIRCUIT

---

DONALD STEVEN ROGERS,

      Petitioner - Appellant,

v.

UNITED STATES OF AMERICA,

      Respondent - Appellee.

No. 95-6092

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-92-2239-A)**

---

Robert C. Jenkins (Charles D. Weisselberg, Dennis E. Curtis, and Carrie L. Hempel with him on the brief), University of Southern California Law Center, Los Angeles, California, for Defendant - Appellant.

Randel Sengel (Patrick M. Ryan and Leslie M. Maye were on the brief), U.S. Attorneys Office, Oklahoma City, Oklahoma, for Plaintiff - Appellee.

---

Before **HENRY**, **BRISCOE** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

     In sentencing Donald Rogers, a federal prisoner convicted of various drug related crimes, the district court multiplied by seven the amount of heroin he delivered for

subsequent distribution.  Rogers appeals the denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence and argues that the district court improperly enhanced the twenty-four ounces of pure heroin that he admitted delivering by the number of times the drug was cut for resale. We affirm.

I

In 1988, a jury found Rogers guilty of engaging and conspiring to engage in racketeering activities, possessing and conspiring to possess heroin with intent to distribute, and traveling interstate to facilitate the conspiracy.  According to the presentence report, Rogers delivered heroin from California to Johnny Lee Sanders, who allegedly operated a heroin distribution enterprise in Oklahoma City from 1978 to 1987. Rogers admitted to the probation officer preparing the report that he was involved in the heroin distribution conspiracy from January to November of 1987 and that during that time he delivered a total of twenty-four ounces of pure heroin to Sanders.[1]

---

[1]    According to Rogers, trial testimony indicates that he delivered only five ounces of heroin.  Appellant's Br. at 4; see also Appellant's App. at 149.  While the record contains less than ten pages of the trial transcript, Appellant's App. at 132-139, those pages indicate that Rogers delivered more than five ounces to Evelyn Pitts' house; on one occasion, he delivered "five or six ounces of heroin" to Sanders at Evelyn Pitts' house, id, at 134, and he returned to her house a second time to deliver more heroin, id. at 137.

Applying the sentencing guidelines,[2] which tie sentences for drug offenses to the "total weight" of the drugs involved, the probation officer recommended that Rogers be held liable for the subsequent cuts that were made to the pure heroin he delivered to Sanders. The probation officer found that the "amount which was distributed by Mr. Rogers to the conspiracy increased sevenfold from 24 ounces to approximately 168 ounces." Appellant's Supp. App. at 11. Accordingly, the probation officer used "168 ounces of diluted heroin" to calculate Rogers' base offense level. See id. at 12.

Rogers objected to the recommendation. He urged the court to base the sentence on the 24 ounces of heroin he admitted delivering to Sanders. Id. at 17; Appellant's App. at 39. The government, on the other hand, argued that Rogers' sentence should be based on the total quantity of heroin distributed by Sanders' organization over the years, thirty kilograms. Appellant's App. at 40-43.

The district court refused to hold Rogers responsible for the entire thirty kilograms of heroin that had been distributed by the conspiracy. See id. at 44. The court ruled, however, that for purposes of determining the base offense level, it was appropriate to use a multiplier to account for cuts that were made to the pure heroin Rogers supplied. Id. at 43-44. Relying on trial testimony, the court found that raw heroin was cut at least seven

---

[2] The probation officer determined that Rogers should be sentenced pursuant to the Sentencing Reform Act of 1984 because the offense conduct continued until after November 1, 1987. Appellant's Supp. App. at 9. Rogers does not argue that the sentencing guidelines should not apply.

times before reaching the street. Id. Thus, in accordance with the presentence report, the court used 168 ounces of heroin to calculate the base offense level.

Rogers' total offense level, after deducting two points for acceptance of responsibility, was 32, which corresponded to a sentencing range of 151 - 181 months. The court sentenced Rogers near the bottom of that range, to 156 months for each of the racketeering and heroin distribution offenses. The court also sentenced Rogers to 60 months for traveling interstate to facilitate the conspiracy and ordered all sentences to run concurrently. Rogers appealed. In a previous opinion, we affirmed his convictions. See United States v. Rogers, 921 F.2d 975 (10th Cir.), cert. denied, 498 U.S. 839 (1990). Rogers did not challenge on direct appeal the drug quantity upon which his sentence was based. See id. at 977 n.5.

Rogers then filed this § 2255 motion challenging his sentence. He argued that the district court erred in multiplying the heroin he delivered by the number of times it was cut for resale and that his attorney's ineffective assistance provides cause for not raising this issue on direct appeal.[3] In response, the government argued that the guidelines permitted the conversion of the pure heroin to the street quantity at the retail level, to reflect the scale of Rogers' participation in the offenses. The government also submitted

---

[3] Rogers also argued below that he was denied the right to counsel during the presentence interview. The district court rejected that claim and Rogers does not appeal that issue.

an affidavit of Rogers' appellate attorney,[4] stating, "I did not raise the issue of the 'Multiplier' in the appeal of Donald Steven Rogers because I did not feel that the issue had merit." Appellant's App. at 108.

Because Rogers did not challenge the drug quantity on direct appeal, the district court ruled he was procedurally barred from raising that claim in his § 2255 motion unless he showed cause and prejudice. The court determined that the attorney's deliberate decision to forgo the claim on direct appeal was not outside the range of professionally competent assistance required under the Sixth Amendment, given that applicable sentencing guidelines permit sentences for drug conspiracy offenses to be based on conduct in furtherance of a conspiracy that was known or reasonably foreseeable to the defendant. Therefore, the attorney's conduct did not provide cause excusing the procedural default.

II

A § 2255 motion cannot be used "to test the legality of matters which should have been raised on appeal." United States v. Khan, 835 F.2d 749, 753 (10th Cir. 1987), cert. denied, 487 U.S. 1222 (1988). To obtain relief on new claims, a § 2255 petitioner must show "cause excusing his . . . procedural default, and . . . actual prejudice resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982) (quotations omitted).

---

[4]    The same attorney represented Rogers at trial and on direct appeal.

An attorney's error provides cause to excuse a procedural default only if the error amounts to constitutionally ineffective assistance of counsel. See Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); see also United States v. Kissick, 69 F.3d 1048, 1054 (10th Cir. 1995). To establish ineffective assistance of counsel, a defendant must show (1) that his attorney's performance was deficient and (2) that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); United States v. Cook, 49 F.3d 663, 665 (10th Cir. 1995).

Repentance born of a failed trial or sentencing strategy can often be turned against defense counsel. We recognize that such criticism is often converted into a challenge asserting inadequate assistance. Thus, we look for genuine -- rather than perceived -- ineffectiveness of counsel. Under Strickland we first examine whether "'counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Kissick, 69 F.3d at 1054 (quoting Strickland, 466 U.S. at 687). "[A] defendant is entitled to the exercise [of] the skill, judgment and diligence of a reasonably competent defense attorney." Id. (quotation and citation omitted). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. We "must indulge a strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Under the prejudice aspect of Strickland we inquire whether "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Kissick, 69 F.3d at 1055 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "However, a court may not set aside a conviction or a sentence solely because the outcome would have been different absent counsel's deficient performance." Kissick, 69 F.3d at 1055. "Instead, in order to establish the required prejudice, a defendant must demonstrate that counsel's deficient performance rendered the proceeding 'fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 113 S. Ct. 838, 842-43 (1993)).

"In a § 2255 action, we review the district court's legal conclusions regarding ineffective assistance of counsel claims de novo." Cook, 49 F.3d at 665. We also review the district court's interpretation and application of the sentencing guidelines de novo. Id.

III

Rogers was sentenced in November 1988, barely one year after the sentencing guidelines took effect. The 1988 guidelines required the district court to set Rogers' base offense level at the "level specified in the Drug Quantity Table." USSG § 2D1.1(a)(3)

(1988). Similar to the current guidelines, the 1988 Drug Quantity Table established sixteen base offense levels, based on the "Controlled Substances and Quantity" involved in the drug offense. Id., Drug Quantity Table. A footnote to the Drug Quantity Table stated, in relevant part: "The scale amounts for all controlled substances refer to the total weight of the controlled substance. Consistent with the provisions of the Anti-Drug Abuse Act, if any mixture of a compound contains any detectable amount of a controlled substance, the entire amount of the mixture or compound shall be considered in measuring the quantity." § 2D1.1, Drug Quantity Table, note * (1988).

At Rogers' sentencing hearing, the district court grappled with the quantity of heroin that should be used to determine the base offense level, and concluded that "the street quantity is the quantity that the Court will use for purposes of resolving any differences here and not the raw or uncut heroin, and there is ample testimony to the effect that a cut of seven is a reasonable figure." Sentencing Tr., Appellant's App. at 43-44. The district court added, however, "And I think that the street quantity is clearly what is referred to, for example, in illustrative cases given in the commentary to the rules here, some appear on page 241 of the version of the guidelines that I'm using, that street quantity at the retail level is the reference." Id. at 44.

Unclear about the district court's reason for multiplying the pure heroin by the number of times it was cut for resale, Rogers asked whether the court had made a specific finding about the use of the multiplier. The district court answered, "Yes, that the street

quantity is the pertinent amount for purposes of the [Drug Quantity] table. . . . And that finding is based in part upon the examples given, which to me are quite clearly in reference to street amounts." Id. at 56.

The examples to which the court referred are those that follow application note 10, in the commentary to § 2D1.1 of the 1988 guidelines. The examples show how to use the Drug Equivalency Table to arrive at a base offense level. The Drug Equivalency Table provides conversion factors to be used when two or more controlled substances must be combined to arrive at a single base offense level, or when the offense involves a controlled substance not listed in the Drug Quantity Table. Although one of the examples involves cut controlled substances, and the others involve rather large quantities, none of the examples indicate that pure drugs should be converted to the street quantity at the retail level before selecting the base offense level from the Drug Quantity Table. The district court appears to have incorrectly interpreted the examples to require conversion of pure drugs to the street quantity at the retail level.

We are not convinced, however, that the sentence imposed by the district court was erroneous under the facts of this case. In a drug conspiracy case, such as this one, "a defendant's sentence is not based merely upon the amount with which the defendant dealt personally." United States v. Edwards, 69 F.3d 419, 438 (10th Cir. 1995) (citations and quotations omitted), cert. denied, 64 U.S.L.W. 3821 (June 10, 1996). Instead, the guidelines require the sentencing court to consider relevant conduct of co-conspirators in

setting the base offense level.  USSG § 1B1.3(a)(1), application note 1 (1988); USSG § 2D1.4, application note 1 (1988); USSG § 1B1.3(a)(1)(B) (1995).  Thus, under certain circumstances, the guidelines attribute a co-conspirator's cuts to or conversion of a controlled substance to a defendant.  See, e.g., United States v. Robertson, 45 F.3d 1423, 1444 (10th Cir.), cert. denied, 115 S. Ct. 2258, 115 S. Ct. 2259, 116 S. Ct. 133 (1995).

When Rogers was sentenced, the guidelines required the sentencing court to account for "conduct in furtherance of the conspiracy that was known to or was reasonably foreseeable by the defendant." § 1B1.3, application note 1 (1988).  Regarding conspiracies to commit drug offenses, the 1988 guidelines also provided:

> If the defendant is convicted of a conspiracy that includes transactions in controlled substances in addition to those that are the subject of substantive counts of conviction, each conspiracy transaction shall be included with those of the substantive counts of conviction to determine scale. . . .  If the defendant is convicted of conspiracy, the sentence should be imposed only on the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable.

USSG § 2D1.4, application note 1 (1988).

Although the applicable guidelines sections required the district court to sentence Rogers for reasonably foreseeable conduct in furtherance of the conspiracy, the district court made no explicit findings in this regard.  The court did imply, however, that it had other reasons for multiplying the pure heroin by the number of times it was cut, other than its determination that the examples in the guidelines referred to street quantities.  See Sentencing Tr., Appellant's App. at 56 (stating that the finding that the street quantity is

the pertinent amount for purposes of the Drug Quantity Table "is based <u>in part</u> upon the examples given" (emphasis added)).

Ruling on Rogers' § 2255 motion, the district court drew this conclusion from the record: "Although [Rogers] may not have personally participated in cutting or selling the heroin in its diluted 'street quantity' form, the later drug sales were a foreseeable result of his drug sales and were well within the scope of [his] agreement to provide heroin for subsequent distribution in multiplied form." Appellant's App. at 161. The district court held that the attorney's decision not to raise the multiplier argument on direct appeal was not unreasonable, given that the guidelines "entitled" the sentencing court to base the defendant's sentence on the amount of drugs involved in foreseeable transactions in furtherance of the conspiracy.

We agree. Although the sentencing court may have incorrectly read the examples in the guidelines to require automatic conversion of pure drugs to street quantities, the guidelines not only permitted, but required, the court to account for foreseeable cuts to the heroin in furtherance of the conspiracy. The district court has now determined that the record shows that all cuts to the heroin were foreseeable and within the scope of Rogers' agreement to participate in the conspiracy. Under these circumstances, Rogers' attorney had little to gain by raising the multiplier issue on appeal. Thus, we conclude that Rogers' attorney did not provide constitutionally ineffective assistance by failing to raise this error on direct appeal.

Rogers claims that the guidelines would not have allowed the sentencing court to treat the co-conspirators' cuts to the heroin as relevant conduct. He argues that although the cuts were foreseeable, they were not within the scope of any activity he agreed to jointly undertake. We cannot determine from the small part of the trial transcript that has been included in the record on appeal whether the cuts were within the scope of Rogers' agreement to participate in the conspiracy. Since Rogers challenges the district court's factual finding that "cutting or selling the heroin in its diluted 'street quantity' form . . . [was] well within the scope of [his] agreement to provide heroin for subsequent distribution in multiplied form," it is not unreasonable to expect Rogers to have included in the record on appeal all evidence relevant to that finding if he wishes to challenge it. See Dikeman v. National Educators, Inc., 81 F.3d 949, 955 (10th Cir. 1996); Deines v. Vermeer Mfg. Co., 969 F.2d 977, 978-79 (10th Cir. 1992). Without an adequate record, we will not set aside the district court's facially rational finding that the cuts to the heroin were within the scope of Rogers' agreement to participate in the drug distribution conspiracy.

Affirmed.