**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 9 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOSEPH LUJAN,

      Defendant-Appellant.

No. 00-2016

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CR-99-13-JC)**

---

Submitted on the briefs:[*]

Michael G. Katz, Federal Public Defender, and Jill M. Wichlens, Assistant Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

Norman C. Bay, United States Attorney, and Mary Catherine McCulloch, Assistant United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **KELLY, HOLLOWAY** and **HENRY**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

    [*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f). The case is therefore submitted without oral argument.

Defendant-appellant Joseph Lujan,[1] along with four others, was indicted on three counts arising from his attempt to sell approximately three pounds of methamphetamine to an undercover officer. Mr. Lujan entered into a plea agreement with the prosecution and pleaded guilty to count one of the indictment. That count charged him with conspiring with the other named defendants to possess more than 50 grams of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Mr. Lujan was sentenced to 120 months' imprisonment, to be followed by five years' supervised release, and a $100.00 assessment. He now appeals his sentence.

## I

Because the charges against Mr. Lujan were resolved by the plea bargain and guilty plea, the underlying facts as reflected in the record may be briefly stated. The following basic facts are found in the transcript of the change of plea hearing, conducted in accordance with Fed. R. Crim. P. 11, in which the Government gave a brief summary of the evidence it would anticipate presenting if the case were to go to trial.

Lujan had arranged with one of the co-defendants, Frias, to sell methamphetamine. Frias set up a sale to a buyer who was an undercover agent. A sale of eight pounds of

---

[1]The name "Joseph Lujan" is an alias, a fact which was learned before sentencing. Because the district court's judgment and sentence is under the assumed name, we also use it in this opinion.

methamphetamine was planned.  Frias met with the undercover agent and provided him a sample.  When the agent approved the sample and indicated that he wanted to purchase a quantity of the drug, Frias said that he needed to call his cousins.  III R. 7.

Frias made a telephone call, and minutes later Lujan and another co-defendant appeared at the scene with one pound of methamphetamine.  After some discussion about price and payment, and after the agent had shown the sellers that he indeed had the money for the requested purchases, Lujan agreed to supply more methamphetamine.  Lujan eventually brought more methamphetamine, and the agent left the scene, purportedly to get the money.  Other officers then converged on the scene and executed a search warrant.  Approximately three pounds of methamphetamine were seized, which was the basis for the three charges in the indictment.  III R. 7-8.  In entering his plea of guilty, Mr. Lujan admitted that he delivered the methamphetamine to Frias's house, that he knew what it was, and that he was to be paid $200 per pound for his part in the sale.  *Id*. at 8-9.

At sentencing, the district court calculated the range under the Sentencing Guidelines to be 108 to 135 months.  The judge indicated that he would impose a sentence of 108 months.  The probation officer pointed out, however, that under 21 U.S.C. § 841(b)(1)(A) the defendant was subject to a mandatory minimum sentence of ten years.  The court then imposed a sentence of ten years, *inter alia*.  Defendant Lujan brings this appeal from his sentence.

**II**

-3-

## A

On appeal, defendant raises a single issue, arguing that his sentence violates the principle enunciated by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Although the defendant in *Apprendi* had been prosecuted under state law, we have held that the constitutional holding in that case must be applied to federal prosecutions as well. *United States v. Jones*, 235 F.3d 1231, 1235 (10th Cir. 2000). We have also held that drug quantities under the federal statutes involved in this case are to be treated as elements of the offense, subject to the *Apprendi* rule and that such facts must be pleaded in the indictment. *Id.* at 1236.[2]

Mr. Lujan raised no objection in the district court to the indictment or the sentence, so our review is only for plain error. Before an appellant in a criminal case is entitled to relief under the plain error doctrine, he must meet these requirements:

> To notice plain error under Fed. R. Crim. P. 52 (b), the error must (1) be an actual error that was forfeited; (2) be plain or obvious; and (3) affect substantial rights . . . . Where the law was settled at the time of trial and clearly contrary to the law on appeal, it is sufficient if the error is plain on

---

[2]Although *Apprendi* was decided after final judgment had been entered in the district court, it is "to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." *See Jones*, 235 F.3d at 1235 (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)).

-4-

> appeal. . . . . Given plain error that affects substantial rights, an appellate court should exercise its discretion and notice such error where it either (a) results in the conviction of one actually innocent, or (b) "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

*United States v. Keeling*, 235 F.3d 533, 538 (10th Cir. 2000) (internal citations omitted) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

In the instant case, Mr. Lujan does not meet the first requirement. His case does not reveal a violation of the Supreme Court's new rule in *Apprendi*. Unlike some other drug prosecutions, *see, e.g., United States v. Jackson*, 240 F.3d 1245 (10th Cir. 2001), the indictment in this case *did* specify a drug quantity. Nor is this a case in which the sentence was based on a quantity greater than that alleged in the indictment, with the greater quantity having been established during sentencing proceedings by the court using the preponderance of the evidence standard. Therefore, Mr. Lujan must resort to imploring this court to extend, rather than merely apply, the principle of *Apprendi*.

For Mr. Lujan to prevail, he must convince us first to modify the rule of *Apprendi* by making it applicable to the mandatory *minimum* sentence established by a particular statute. Even such an extension of the *Apprendi* rule would not be enough to entitle him to relief in this case, however. Instead, for Mr. Lujan to prevail we would also have to interpret the indictment's specification of the quantity of methamphetamine involved here in a way that no case from our circuit has yet done. It should be obvious that, whatever the merits of Mr. Lujan's arguments might be in another context, we cannot adopt these two new rules of law and then declare that the imposition of sentence in this case was

-5-

plain error for being inconsistent with such new rules. Even if we were to assume, *arguendo*, that the district court erred, we would be unable to say that the errors were obvious. Accordingly, we decline to address the arguments on the merits, leaving the issues for another day. Our reasoning follows.

**B**

To understand the defendant's *Apprendi* argument, it is necessary first to examine the penalty provisions of the applicable statute. The statutory penalty scheme for drug violations establishes three layers of penalty ranges for drug crimes, with escalating ranges of minimum and maximum sentences depending on, *inter alia*, the quantity of drugs involved in the violation. As applicable to drug crimes involving methamphetamine, and excluding two factors not applicable in this case,[3] the ranges are as follows:

♦ minimum 10 years, maximum life if the quantity is "50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;" 21 U.S.C. § 841(b)(1)(A)(viii)

♦ minimum 5 years, maximum 40 years, if the quantity is "5 grams or more of methamphetamine . . . or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine . . . ." *Id.* at § 841(b)(1)(B)(viii)

---

[3]The two statutory factors which increase the punishment ranges but which are not applicable in this case are (1) a resulting death or serious bodily injury, and (2) a previous conviction for a felony drug offense. 21 U.S.C. § 841(b).

♦     no minimum and 20 year maximum if the quantity is unspecified or less than the amounts specified in § 841(b)(1)(B)(viii).  *Id*. at § 841(b)(1)(C).

In the instant case, the indictment alleged that defendant's violation involved more than 50 grams of methamphetamine.  Therefore, the maximum penalty for his offense is life imprisonment.  Lujan's sentence of ten years is well under that statutory maximum. Indeed, the sentence is less than the 20 year maximum provided under section 841(b)(1)(C) for offenses with no specified quantity of methamphetamine.

Mr. Lujan's argument, however, is that the rationale of *Apprendi* compels its extension to a mandatory minimum term of imprisonment.  Mr. Lujan contends that because the drug quantity increased the minimum sentence with which he was faced, the *Apprendi* reasoning should lead to the conclusion that the drug quantity must have been pleaded in order for the higher minimum sentence to be valid.  Even though *Apprendi* expressly did not overrule *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), which held that judges may find by a preponderance of the evidence facts that trigger mandatory minimum penalties, one circuit has held (without mentioning *McMillan*) that *Apprendi* mandates that drug quantities which trigger mandatory minimums must be pleaded in the indictment and submitted to the jury.  *United States v. Strayhorn*, 250 F.3d 462, 468-71 (6th Cir. 2001).[4]  *But see United States v. Hill*, 252 F.3d 919, 921-22 (7th Cir. 2001)

---

[4]Although it is immaterial to our analysis, we note that a divided panel of the Sixth Circuit has recently stated that the court has not decided whether *Apprendi* requires that a drug quantity triggering a statutory minimum sentence must be pleaded in the indictment.

(rejecting reasoning of *Strayhorn* and pointing out that the Seventh Circuit and four other circuits had previously declined to extend *Apprendi* to mandatory minimum sentences).

Even if we were to follow *Strayhorn* and extend the rationale of *Apprendi* to mandatory minimum sentences, however, that alone would not entitle Lujan to relief in the circumstances presented here. The indictment here *did* allege possession of a quantity sufficient for the mandatory minimum sentence that was imposed, and by pleading guilty to Count 1 of the indictment Mr. Lujan of course waived the right to have that fact determined by a jury.

Lujan, however, asks that we adopt another rule extending *Apprendi* beyond its actual holding. This argument is based on the specific language employed in the statute with respect to offenses involving methamphetamine. As noted *supra*, the statutory scheme for methamphetamine lists two quantities at each level of offense, rather than one. Defendant was indicted and sentenced under section 841(b)(1)(A)(viii), which applies when the offense involves 50 grams or more of methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Defendant contends that the language in the indictment is ambiguous because it could be construed to mean either 50 grams of pure methamphetamine or 50 grams of a mixture containing a detectable amount of methamphetamine. If the indictment were construed the latter way, then the mandatory minimum sentence would be five years instead of ten.

---

*United States v. Stafford*, 258 F.3d 465, 477 n.8 (6th Cir. 2001).

Lujan did not challenge the indictment in the district court, so we review only for plain error. When an indictment is attacked for the first time on appeal, we liberally construe the indictment in favor of its validity. *United States v. Willis*, 102 F.3d 1078, 1081 (10th Cir. 1996). Under that standard, we conclude that "50 grams or more of methamphetamine" should be construed as meaning what it says, rather than meaning what it does not say, *i.e.*, "50 grams or more of a mixture or substance containing a detectable amount of methamphetamine." We therefore hold that there was no plain error in sentencing Mr. Lujan under section 841(b)(1)(A)(viii). Because we construe the indictment in this way, the mandatory minimum sentence imposed by the district court was proper under section 841(b)(1)(A)(viii). It is therefore unnecessary for us to consider Mr. Lujan's argument that the holding of *Apprendi* should be extended to apply to statutory minimums, as well as statutory maximums: His sentence would be proper even if we had adopted such a rule.

Accordingly, the sentence is **AFFIRMED.**