**UNITED STATES of America,**
**Plaintiff/Respondent,**

v.

**Gary Jack HOLLIS, Jr.,**
**Defendant/Movant.**

No. 98–40024–02–DES, 01–3103–DES.

United States District Court,
D. Kansas.

March 22, 2002.

Gary Jack Hollis, Jr., Springfield, MO, Pro se.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant's motion brought pursuant to 28 U.S.C. § 2255 (Doc. 250). Defendant asserts his sentence should be vacated, set aside or corrected in light of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Defendant also asserts that his sentence should be vacated, set aside or corrected due to ineffective assistance of counsel and error by the district court in calculating the quantity of drugs attributable to defendant. The government has filed a Response (Doc. 257), and defendant has filed a Reply (Doc. 260) to the government's response. For the reasons set forth below, defendant's motion is denied.

### I. FACTUAL BACKGROUND

On March 26, 1997, Wayne Getman asked Justin Lapping to go to Oklahoma to pick up iodine crystals for use in the manufacture of methamphetamine. Before the trip to Oklahoma, Lapping, and his friend Sean Holmes, met at defendant's home where defendant and Getman were both present. Getman told Lapping and Holmes to return the crystals to defendant's home and if Getman was not there, to leave them with defendant. Lapping and Holmes were aware that Getman intended to use the crystals to manufacture methamphetamine. Getman gave Lapping the money to purchase the crystals and

Lapping and Holmes began their trip to Oklahoma.

Upon arrival in Oklahoma, Lapping and Holmes bought the crystals and began the journey back to Kansas. While en route, the two men were stopped by the Oklahoma Highway Patrol. After receiving conflicting stories as to the purpose of the trip to Oklahoma, the officer asked to search the vehicle. The request was denied so the officer then utilized a drug dog to sniff the vehicle for contraband. The dog altered to two areas of the vehicle and the officer began the search, eventually locating the iodine crystals.

When asked about the iodine crystals, Holmes indicated he and Lapping had purchased the crystals at the direction of Getman and Getman intended to use the crystals to manufacture methamphetamine. The officer contacted the Kansas Bureau of Investigation ("KBI"). The officer was advised to release Lapping and Holmes with instructions to contact the KBI upon their arrival in Kansas.

Once Lapping and Holmes returned home, they immediately delivered the crystals to defendant's home, as instructed. The defendant was the only person present when Lapping and Holmes delivered the crystals. According to testimony at trial, after receiving the crystals, defendant left his home with the crystals. Defendant returned to his home about thirty minutes later and Lapping was still there. Lapping and defendant left to go to Getman's home. At Getman's home, Lapping observed the iodine crystals on the back porch. Additionally, Lapping observed all the items necessary to manufacture methamphetamine. Lapping spent the night at Getman's home. By morning, the methamphetamine had been "cooked" and Lapping and the defendant tested three coffee filters (each approximately three-quarters full of pure methamphetamine) by "shooting-up."

On September 8, 1997, the Cherokee County Sheriff's Department arranged for a confidential informant to conduct a controlled purchase of methamphetamine from the defendant at his residence in Colombus, Kansas. The informant was provided $100 of "prerecorded drug buy money," which was used to purchase one gram of methamphetamine from defendant. Following the purchase, the gram of methamphetamine was turned over to law enforcement officers and the informant advised officers he had observed approximately twenty grams of methamphetamine inside defendant's home.

After the controlled buy, officers applied for and received a search warrant for defendant's home. Upon execution of the search warrant, officers found a clandestine methamphetamine laboratory. The following items related to the manufacture and use of methamphetamine were seized: glassware, coffee filters containing red phosphorous, lantern fuel, rubber gloves and tubing, digital scales, syringes, sulphuric acid, paint thinner, ephedrine, acetone, and a plastic container with red filter material which was believed to be red phosphorous or iodine crystals. Officers also found a baggie of white powder, which was field tested and found to be methamphetamine, a bottle which was tested and found to contain hydrochloric acid, and another jar containing methamphetamine suspended in acetone. Finally, after searching defendant, officers discovered the marked "buy" money in defendant's wallet.

On March 18, 1998, a Sealed Indictment was filed in federal district court. On March 23, 1998, defendant was arrested on a federal warrant stemming from the indictment. In executing the arrest warrant federal marshals conducted a forced entry into defendant's home as defendant refused to answer the door. After entering

defendant's home, the officers noticed a strong odor coming from a bedroom. Officers discovered another clandestine methamphetamine laboratory. Officers recovered many items including: a flask which was determined to contain methamphetamine, phosphorous and iodine, a jar containing methamphetamine and pseudoephedrine, a bag containing ephedrine or pseudoephedrine, a jar containing methamphetamine and acetone, and a jar containing sodium hydroxide.

On July 1, 1998, defendant was charged in three counts of an eight-count Superceding Indictment in the United States District Court for the District of Kansas. Count one of the Indictment charged that on or about March 26, 1997, Getman and defendant conspired with Holmes and Lapping to manufacture approximately three and one half pounds of methamphetamine in violation of 21 U.S.C. § 846, with reference to 21 U.S.C. §§ 812 and 841(a)(1) and 18 U.S.C. § 2. Count six of the Indictment charged that on or about September 8, 1998, defendant manufactured methamphetamine in violation of 21 U.S.C. § 841(a)(1) with reference to 21 U.S.C. § 812 and 18 U.S.C. § 2. Count eight charged that on or about March 23, 1997, defendant manufactured methamphetamine in violation of 21 U.S.C. § 841(a)(1) with reference to 21 U.S.C. § 812 and 18 U.S.C. § 2.

On November 30, 1998, a jury trial commenced. At trial, the government presented the testimony of Justin Lapping and Sean Holmes. Both Lapping and Holmes implicated defendant as Wayne Getman's "right hand man." Lapping and Holmes also testified that they believed defendant was involved in the conspiracy to manufacture methamphetamine. At the close of the government's case, defense counsel did not call any rebuttal witnesses and instead chose to rest, anticipating that the government did not prove the elements of its case. On December 8, 1998, the jury returned a verdict of guilty on all counts.

Defendant's sentence was calculated based on the United States Sentencing Commission Guidelines ("U.S.S.G.") found in U.S.S.G. § 2D1.1(c)(2).[1] The offense level used in determining the sentence length was calculated by assessing the amount of drugs attributable to defendant. The pre-sentence investigation report prepared by the United States Probation Office determined defendant was responsible for two kilograms of methamphetamine, requiring a base offense level of thirty-six. The two-kilogram figure was based on the ten pounds of iodine purchased by Lapping over the course of his dealings with Getman. According to the KBI, the iodine could have produced over four kilograms of methamphetamine, but the number was reduced by fifty percent. Defendant objected to the ten pound figure and argued instead that seven pounds of iodine would be the appropriate figure. Defendant also objected to the calculation used to extrapolate the amount of methamphetamine produced from the iodine. Defendant eventually withdrew his objections as to the drug quantity calculation.

The offense level of thirty-six combined with defendant's criminal history category of IV, produced a sentencing range of 262 months to 327 months pursuant to the U.S.S.G. The statutory provisions under which defendant was sentenced require a sentencing range of not "less than 10 years or more than life." 21 U.S.C. § 841(b)(1)(A). Defendant was sentenced to a term of imprisonment of 262 months on counts one, six, and eight with each sentence to be served concurrently, followed by a supervised release of five years per count, also to be served concurrently.

---

**1.** U.S.S.G. § 2D1.1(c)(2) provides for a base offense level of 36 for "at least one kilogram, but less than three kilograms of methamphetamine."

Defendant appealed his conviction to the Tenth Circuit alleging the trial court erred in granting the government's motion in limine regarding the testimony of Sergeant Robert Thomas and also that the there was insufficient evidence to convict defendant. In an unpublished opinion, the Tenth Circuit rejected both of defendant's claims, affirming his conviction. *United States v. Hollis,* 2000 WL 235250, 208 F.3d 227 (10th Cir.2000). Defendant petitioned the Supreme Court on a writ of certiorari and the writ was denied on October 2, 2000. Accordingly, defendant's conviction became final on October 2, 2000. *See Griffith v. Kentucky,* 479 U.S. 314, 322–23, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *United States v. Simmonds,* 111 F.3d 737, 744 (10th Cir.1997).

## II. DEFENDANT'S CLAIMS

Defendant makes the following claims in his § 2255 motion:

1. There was an *Apprendi* error in defendant's case.

2. *Apprendi* renders 21 U.S.C. § 841 unconstitutional.

3. The Constitution was violated if § 841(b) is an element of the offense.

4. Defendant received ineffective assistance of counsel because counsel failed to interview witnesses and failed to call witnesses, and counsel failed to give an opening statement or otherwise put on a defense.

5. Defendant was denied his right to testify or, alternatively, defendant's trial counsel was ineffective for failing to advise him that the right to testify was solely defendant's decision to make.

6. The district court erred in reaching the drug quantity determination.

(Pet. at 2–3).

## III. DISCUSSION

### A. *Apprendi*

#### 1. Application of *Apprendi* on Collateral Review

Defendant contends that the Supreme Court's decision in *Apprendi* renders his conviction unconstitutional. In *Apprendi,* the Court held that "any fact increasing the penalty for a crime beyond the statutory maximum, [other than prior convictions], must be submitted to the jury, and proved beyond on a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. In defendant's case, the jury was not required to make a drug quantity finding. Instead, the jury was instructed that they must only find "a measurable amount" of drugs. (Jury Instruction No. 14). After *Apprendi,* if a jury is not required to make a drug quantity finding, a defendant may only be sentenced in accordance with the catchall sentencing provision contained in 21 U.S.C. § 841(b)(1)(C). *United States v. Jackson,* 240 F.3d 1245, 1248 (10th Cir. 2001), *overruled on other grounds by United States v. Prentiss,* 256 F.3d 971 (10th Cir.2001). The maximum allowable sentence under § 841(b)(1)(C) is 240 months, twenty-two months less than the sentences imposed on defendant pursuant to § 841(b)(1)(A). Thus, as defendant correctly points out, he was sentenced in contravention to the rules announced in *Apprendi.*

Defendant argues the rules set forth in *Apprendi* should operate retroactively pursuant to *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) on initial § 2255 motions.[2] The

---

**2.** Pursuant to *Teague,* new rules announced *after* a defendant's conviction becomes final may not be applied retroactively on collateral attack unless the rule fits into one of two narrow exceptions. *Teague,* 489 U.S. at 310,

court finds, however, that it is unnecessary to determine whether *Apprendi* applies retroactively pursuant to *Teague* because defendant's conviction did not become final until after *Apprendi* was announced.[3] If a defendant's case is pending appeal when a new rule is announced by the Supreme Court, such as occurred in defendant's case, the defendant is entitled to the benefit of the new rule. *Griffith*, 479 U.S. at 322, 107 S.Ct. 708. *See also United States v. Lujan*, 268 F.3d 965, 967 n. 2 (10th Cir.2001) (stating "Although *Apprendi* was decided after final judgment had been entered in the district court, it is 'to be applied retroactively to all cases, state or federal, pending on direct review or not yet final.' ") (internal citations omitted).

The government, in their response, concedes this issue in stating, "The first step [in the *Teague* analysis] is to determine whether the defendant's conviction became final prior to the new decision he invokes. If it did not, he is entitled to the benefit of the decision." (Gov't Resp. at 18). The government, however, fails to recognize that defendant's conviction did not become final until his petition for certiorari was denied, well after *Apprendi* was decided. Because a retroactivity analysis is improper in this case, the ultimate issue is whether defendant's *Apprendi* claim is procedurally defaulted because he failed to raise the issue on direct appeal.

## 2. Procedural Bar

Generally, a federal prisoner is procedurally barred from collaterally attacking his sentence in a § 2255 insofar as the attack is based on issues that could have been, but were not raised on direct appeal. *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Allen*, 16 F.3d 377, 378 (10th Cir.1994). Because *Apprendi* was announced before defendant's conviction became final he could have raised the issue on direct appeal. *See* SUP. CT. R. 15(8) (allowing any party to amend petition for certiorari, calling the Court's

---

109 S.Ct. 1060. First, new Supreme Court rules which place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" may be applied retroactively. *Id.* at 307, 109 S.Ct. 1060. Second, "watershed constitutional rules of criminal procedure which requires the observance of 'those procedures that … implicit in the concept of ordered liberty' " are applied retroactively under *Teague*. *United States v. Moss*, 137 F.Supp.2d 1249, 1252 (D.Kan.2001) (citing *Teague*, 489 U.S. at 311, 109 S.Ct. 1060). By most accounts, *Apprendi* would not apply retroactively on an initial § 255, such as defendant's, pursuant to *Teague*. Although the Tenth Circuit has not decided whether the *Teague* exceptions apply to make the rule in *Apprendi* retroactive on initial § 2255 motions, many courts in the District of Kansas as well as many circuit courts have decided the rules set forth in *Apprendi* do not qualify under either *Teague* exception. *See, e.g., McCoy v. United States*, 266 F.3d 1245, 1255–58 (11th Cir.2001); *United States v. Moss*, 252 F.3d 993, 997 (8th Cir.2001); *United States v.*

*Sanders*, 247 F.3d 139, 146–51 (4th Cir.2001); *Jones v. Smith*, 231 F.3d 1227, 1237–38 (9th Cir.2000); *United States v. Watkins*, No. 96–40061–01, 00–3462, 2001 WL 1165467, at *4 (D.Kan. Sept. 11, 2001) (Rogers, J.); *United States v. Garcia*, Nos 01–03029, 97–20067–1, 2001 WL 579817, at *5 (D.Kan. May 23, 2001) (Lungstrum, J.); *Moss*, 137 F.Supp.2d at 1253–54 (Vratil, J.). The Tenth Circuit has definitely said that *Apprendi* does not apply retroactively on second or successive § 2255 motions. *See Browning v. United States*, 241 F.3d 1262, 1265 (10th Cir.2001).

3. *Apprendi* was decided on June 23, 2000, but defendant's conviction did not become final until October 20, 2000 when the Supreme Court denied his petition for certiorari. *See United States v. Burch*, 202 F.3d 1274, 1278 (10th Cir.2000) (stating "a conviction that is 'final' means a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied") (quoting *Griffith*, 479 U.S. at 321 n. 6, 107 S.Ct. 708).

attention to "new cases, new legislation, or other intervening matters not available at the time of the party's last filing."). Defendant, however, will not be procedurally barred from raising claims that were not properly preserved on direct appeal if he can show "cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *Allen*, 16 F.3d at 378. Defendant claims he has cause for not raising the *Apprendi* issues on appeal in that he was provided ineffective assistance of counsel and that the rules set forth in *Apprendi* were unavailable to him during trial and during his direct appeal to the Tenth Circuit. The court will address each of these arguments in turn.

### a. Ineffective Assistance of Counsel as Cause for Procedural Default

Defendant's first alleged "cause" as to his failure to raise *Apprendi* issues on direct appeal is that he was provided ineffective assistance of appellate counsel. *Hickman v. Spears*, 160 F.3d 1269, 1272 (10th Cir.1998) ("Attorney error amounting to constitutionally ineffective assistance of counsel constitutes 'cause' for a procedural default."). Essentially, defendant's argument is that his appellate counsel provided constitutionally ineffective assistance of counsel when he failed to amend defendant's petition for certiorari to include *Apprendi*-type arguments.

When the *Apprendi* decision was rendered, defendant wrote appellate counsel a letter suggesting an amendment to his petition for certiorari, which was pending before the Supreme Court. Defendant's letter to his appellate counsel reads in pertinent part as follows:

I am writing in regards to the brief you did for me on Certiorari. I was looking in the Supreme Court Rules, and seen [sic] that rule 15 said that you

can supplement a brief that is pending when new case law comes out. It seems to me that maybe my brief should be supplemented [to include] that *Apprendi* case . . . .

(Def.Ex. B). In response, appellate counsel advised defendant that while there was clearly an *Apprendi* violation in his case, he should not amend his petition. Appellate counsel stated in his letter, "No I do not think you should amend your petition for cert. [sic]. The issue was not addressed at the 10 Circuit Level [sic] or by the district court and the supreme court [sic] would not review the issue when it has not been decided or preserved below. Your best bet is a 2255." (Def.Ex. C). Appellate counsel also stated that re-sentencing was risky because the judge could reduce defendant's sentences to 240 months, but could run the sentences consecutively instead of concurrently.

To determine whether defendant's appellate counsel's failure to amend defendant's brief constitutes ineffective assistance of counsel, the court is guided by the familiar two-part analysis of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendant must demonstrate (1) counsel's representation fell below an objective standard of reasonableness and (2) that this deficiency prejudiced defendant's defense. *See Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052. In making these determinations, the court must "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Rogers v. United States*, 91 F.3d 1388, 1391–92 (10th Cir.1996). Additionally, under the second prong of *Strickland*, the court must, "inquire whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal citations and quotations omitted). Although *Strickland* provided the

test for determining sufficiency of trial counsel, the same test has been used in evaluating the sufficiency of appellate counsel. *See United States v. Cook,* 45 F.3d 388, 392 (10th Cir.1995).

■ When a defendant alleges his appellate counsel failed to include an issue on direct appeal, the merits of the omitted issue must first be evaluated. *See Cook,* 45 F.3d at 392. In this instance, it is clear that an *Apprendi* violation occurred at sentencing. The jury was not required to make a finding as to drug quantity and defendant was sentenced over the 240 month statutory maximum found in § 841(b)(1)(C). *See supra* Part III.A.1.

■ After finding defendant's *Apprendi* claim was meritorious, the court must now consider whether counsel's failure to raise the issue on direct appeal was constitutionally deficient and prejudicial to defendant. *Cook,* 45 F.3d at 394. As a starting matter, it is important to note that appellate counsel is not required to raise every non-frivolous argument on appeal. *Cook,* 45 F.3d at 394 (citing *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). However, while it may be acceptable to refrain from pursuing weak claims, "an appellate advocate may deliver deficient performance and prejudice a defendant by omitting a 'deadbang' winner . . . ." *Cook,* 45 F.3d at 395 (citing *Page v. United States,* 884 F.2d 300, 302 (7th Cir.1989)).

■ Assuming momentarily that counsel's failure to amend the petition to include *Apprendi* arguments was constitutionally deficient, such failure did not

prejudice defendant because the result of the proceeding would have remained the same even if the brief had been amended to include *Apprendi* arguments. Had defendant's petition been amended to include *Apprendi* arguments, and had the Supreme Court granted certiorari,[4] defendant's case could have only been reviewed for plain error because he failed to raise *Apprendi*-type arguments at trial. *See Lujan,* 268 F.3d at 967. When the law at the time of trial is clearly contrary to the law at the time of appeal, the appellate court will review only for plain error pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure.[5] *United States v. Keeling,* 235 F.3d 533, 538 (10th Cir.2000) (applying plain error review to case pending appeal when *Apprendi* was decided even though defendant had not raised *Apprendi*-type arguments at trial). As the following analysis will illustrate, a plain error review of defendant's case would not have changed the ultimate result despite an obvious *Apprendi* error.

For an error to be recognized as a plain error, the error must "(1) be an actual error that was forfeited; (2) be plain or obvious; and (3) affect *substantial rights,* in other words, in most cases the error must be prejudicial, i.e., it must have affected the outcome of the trial." *Id.* (citing *United States v. Olano,* 507 U.S. 725, 733–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)) (emphasis added). If it is found that the error affected the defendant's "substantial rights," an appellate court will recognize the error where the error either "(a) results in the conviction of one actual-

---

4. *See Thomas v. United States,* 531 U.S. 1062, 121 S.Ct. 749, 148 L.Ed.2d 653 (2001) (granting petition of certiorari and remanding to Second Circuit for further consideration in light of *Apprendi* ); *United States v. Thomas,* 274 F.3d 655, 660 (2d Cir.2001) (reviewing *Apprendi* issues for plain error on remand from the Supreme Court where *Apprendi* was

decided while defendant's case was pending appeal).

5. Rule 56(b) states, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

ly innocent, or (b) seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (citing *Olano*, 507 U.S. at 736, 113 S.Ct. 1770) (internal quotations omitted).

The Tenth Circuit has held that a defendant's "substantial rights" are not affected for purposes of a plain error review when a defendant cannot establish reasonable doubt as to quantity of drugs. *Id.* at 539, 120 S.Ct. 2348 ("Where the jury has not found quantity beyond a reasonable doubt and quantity is integral to punishment, a defendant can demonstrate prejudice if the evidence suggests a reasonable doubt on quantity."). *See also United States v. Perry*, 2001 WL 1230586, at *3, 25 Fed.Appx. 713 (10th Cir.2001). *But cf. Thomas*, 274 F.3d at 669 (recognizing plain error and finding an *Apprendi* error affected defendant's substantial rights because he was sentenced to fifty-two months over the statutory maximum).

■ Defendant has not shown there is reasonable doubt as to the quantity of drugs in this case. While defendant argues that the court erred in assessing quantity, he concedes that even if the court had concurred with his expert and found the quantity was half of that alleged by the government, defendant's sentence would not have changed.[6] (Mem. in Supp. of Pet. at 51). Based on *Keeling*, even if counsel would have amended the petition, a plain error review would not have changed the

outcome of defendant's sentencing. Thus, defendant was not prejudiced by appellate counsel's failure to amend the petition.

■ In the alternative, the Tenth Circuit, as well as many other circuits, have held that a defendant's substantial rights are not affected under a plain error analysis due to an *Apprendi* error because the application of U.S.S.G. § 5G1.2(d) is mandatory.[7] *See United States v. Price*, 265 F.3d 1097, 1108–09 (10th Cir.2001) (holding that § 5G1.2(d) is a mandatory provision and as a result, defendant's substantial rights were not affected when there was an *Apprendi* error because the court would have been required to run defendant's sentences consecutively to approximate the applicable guideline range); *United States v. Roberts*, 262 F.3d 286, 291–92 (4th Cir.2001) (holding that although error was plain, the defendant's substantial rights were not affected because of the mandatory application of § 5G1.2(d)); *United States v. Kentz*, 251 F.3d 835, 842 (9th Cir.2001) (same); *United States v. Sturgis*, 238 F.3d 956, 960–61 (8th Cir.2001) (same).

Section 5G1.2(d) of the Guidelines states:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively,

---

**6.** The government attributed just over two kilograms of methamphetamine to defendant based on the amount of methamphetamine that could have be extracted from ten pounds of iodine. A finding of two kilograms of methamphetamine requires a base offense level of thirty-six pursuant to the sentencing guidelines. *See* U.S.S.G. § 2D1.1(c)(2). Defendant's expert concluded that only one kilogram could have been extracted from the iodine in question. Even if the court would have relied on defendant's expert's calculations, defendant's base offense level would still be thirty-six because U.S.S.G.

§ 2D1.1(c)(2) requires a base offense level of thirty-six for "at least one kilogram, but less than three kilograms of methamphetamine." Additionally, defendant's contention that the iodine should have been calculated to yield a twenty percent return because Getman was a "bad cook," does not establish reasonable doubt as to drug quantity.

**7.** This analysis is only applicable in cases, such as defendant's, where the defendant was convicted on multiple counts and is serving concurrent sentences.

but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

This section of the guidelines requires that even if defendant had been properly sentenced under § 841(b)(1)(C), the court would have been required to run his sentences consecutively to the extent necessary to satisfy the minimum guideline amount of 262 months. Because this requirement is mandatory, an appellate court on a plain error review would not find that defendant suffered "substantial prejudice." *See Price*, 265 F.3d at 1108–09. Therefore, even if appellate counsel would have amended defendant's petition, the outcome would have remained the same. Consequently, defendant is unable to show his appellate counsel's conduct resulted in prejudice.

Because appellate counsel's failure to amend the petition did not prejudice defendant (i.e. there is not a reasonable probability that even if counsel had amended the brief, the outcome would have been different), the court finds defendant has not established that he received ineffective assistance of counsel, and thus, defendant has not established cause for his procedural default.

### b. Unavailability of *Apprendi*

 Defendant also alleges that because *Apprendi* was decided after his trial, he has cause for his procedural default. This court, concurring with other courts sitting in this district as well as other circuit courts, finds that the unavailability of *Apprendi* at the time of trial does not provide cause for a procedural default. *See Sanders*, 247 F.3d at 145; *United States v. Smith*, 241 F.3d 546, 548 (7th Cir.2001); *United States v. Nelson*, 177 F.Supp.2d 1181, 1185–86 (D.Kan.2001); *Cook v. United States*, No. 01–3066, 98–

20040, 2001 WL 950795, at *1 (D.Kan. August 6, 2001); *Moss*, 137 F.Supp.2d at 1254–55.

 Where a claim is unavailable at the time of trial, "cause" exists for a procedural default "where a[the] constitutional claim is so novel that its legal basis is not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). In *Smith*, the Seventh Circuit found that the foundation for *Apprendi* was laid long ago and that "defendants had been making *Apprendi*-like arguments ever since the Sentencing Guidelines came into being ...." *Smith*, 241 F.3d at 548. The *Smith* court also stated that "even when the law is against a contention, a litigant must make the argument to preserve it for later consideration." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)). The court concurs with the Seventh Circuit's rationale and finds that *Apprendi*-type arguments were not so novel as to be unavailable to counsel. Consequently, the fact that *Apprendi* was decided after defendant was sentenced does not provide cause for his procedural default.

### 3. Conclusion

In sum, defendant will not be granted relief on his *Apprendi* claims despite an obvious *Apprendi* error. Defendant's claims are procedurally barred because he is unable to establish "cause" for his procedural default. Defendant's allegation that ineffective assistance of counsel provided cause for his procedural default is rejected because defendant was not prejudiced by his attorney's inaction. Defendant did not suffer prejudice at the hands of his attorney because even if his petition for certiorari had been amended to include *Apprendi* arguments, a review for plain error would not have changed defendant's sen-

tence. Additionally, defendant's claim that unavailability of *Apprendi* at the time of trial provided "cause" for his procedural default is also rejected.

## B. Constitutionality of 21 U.S.C. § 841

■ Defendant's final allegation, that 21 U.S.C. § 841 is unconstitutional in the aftermath of *Apprendi*, is meritless. The Tenth Circuit, joining many other circuit courts, determined § 841 "remains constitutionally enforceable notwithstanding *Apprendi.*" *United States v. Cernobyl,* 255 F.3d 1215, 1219 (10th Cir.2001). *See also United States v. Strachan,* 2001 WL 208470, 5 Fed.Appx. 169, 175 n. * (4th Cir.2001); *United States v. Slaughter,* 238 F.3d 580, 582 (5th Cir.2000).

## C. Insufficiency of Counsel

Defendant claims he was provided ineffective assistance of trial counsel on multiple grounds. First, defendant claims defense counsel refused to call him to the stand despite defendant's relentless requests to testify. Second, defendant claims his counsel refused to call any of the witnesses defendant requested he call and specifically, defense counsel refused to call Wayne Getman, defendant's alleged co-conspirator. Finally, defendant contends his defense counsel refused to put on a defense.

In assessing defendant's claim, the court is again guided by the familiar two-part analysis of *Strickland. See Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. Once again, to make a showing of ineffective assistance of counsel, defendant must demonstrate (1) counsel's representation "fell below an objective standard of reasonableness" and (2) that this deficiency preju-

diced defendant's defense. *See Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052.

### 1. Right to Testify

■ Defendant claims he was denied the right to testify,[8] or, in the alternative, his trial counsel was ineffective for failing to allow him to testify and failing to advise him that the right to testify was solely defendant's choice to make. The court will only address defendant's challenge to sufficiency of counsel in this regard because his claim that he was denied his constitutional right to testify is procedurally defaulted as he failed to raise the issue on direct appeal. *Frady,* 456 U.S. at 165, 102 S.Ct. 1584.

■ It is well settled that a criminal defendant has a constitutional right to testify on his or her own behalf. *See Rock v. Arkansas,* 483 U.S. 44, 49–52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The decision of whether to testify lies solely with the defendant. *United States v. Dryden,* 1998 WL 930582, at *1, 1998 WL 930582 (10th Cir.1998) (" 'counsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter.' ") (quoting *Brown v. Artuz,* 124 F.3d 73, 79 (2d Cir.1997)). *See also United States v. Hershberger,* 1991 WL 136337, at *3, 940 F.2d 671 (10th Cir.1991) (holding that failing to advise the defendant of his right to testify or refusing to call the defendant to testify despite his desire to do so, if proved, would be sufficient to meet the first requirement of the *Strickland* test). If, in fact, defendant's counsel advised the court that defendant would not be testifying in spite of defendant's demand to testify, counsel's conduct fell below an objective standard of reason-

8. Defendant's claim that his right to testify was violated is procedurally barred. Defendant did not raise this claim on direct appeal and it is therefore procedurally barred for

purposes of a § 2255 motion. *See United States v. Willis,* 273 F.3d 592, 595 (5th Cir. 2001).

ableness and defendant has met the first prong of the *Strickland* test.

Defendant maintains that throughout his trial he persistently requested to testify in his own defense. Defendant included a thorough affidavit indicating the content of his intended testimony. Essentially, defendant intended to admit he manufactured methamphetamine as alleged in counts six and eight, but he also intended to rebut the testimony of Justin Lapping and Sean Holmes regarding his involvement with Wayne Getman in the conspiracy to manufacture methamphetamine as alleged in count one. Defendant believed that if he admitted his guilt as to counts six and eight he would be more credible with the jury as to his denial of count one. Defendant contends that his lawyer strongly discouraged this approach, but he remained adamant in his desire to testify. According to defendant, on the final day of the trial he was under the impression he would be called as a witness. Contrary to defendant's wishes, however, his defense lawyer informed the court during a bench conference that defendant would not be testifying.

The record indicates only two occasions in which defendant's desire to testify was discussed. Both discussions took place at the bench and outside the hearing of the jury. First, when asked if he would have witnesses ready to testify on the next day of trial, defense counsel responded, "Just, I anticipate only calling my client, although that's subject to a little dispute right now, but I anticipate that he's going to be my." (R. Vol. V. at 976). The next discussion also took place outside the hearing of the jury:

> Assistant United States Attorney ("AUSA"): I'm going to rest.
> Defense Counsel: Judge, my client has decided not to testify. So I would-I have a have no problem going ahead and waiving my opening statement and -and so we-we're not going to present any evidence, Judge.

(R. Vol. VI at 1082).

Additionally, in response to defendant's allegations, counsel for the government indicates he telephoned defendant's trial attorney, James Chappas, to verify defendant's version of events. According to the government, Mr. Chappas indicated that while he advised defendant against testifying, which often led to disagreements, it was ultimately defendant's decision not to testify. Mr. Chappas's comments were not memorialized in a sworn affidavit (unlike defendant's) and the court will not rely on the government's undocumented telephone conversation with defense counsel.

■ However, even if it is determined that counsel refused to allow defendant to testify, rendering counsel's performance below the objective standard of reasonableness, the court finds defendant is unable to establish that counsel's conduct prejudiced defendant's defense. There was an overwhelming amount of evidence against defendant in reference to counts six and eight. In fact, defendant admits his guilt as to those charges. Thus, even if defendant would have testified, it is unlikely his testimony would have changed the outcome of his trial. *Rogers,* 91 F.3d at 1391. Because defendant was sentenced to 262 months on each count, acquittal on count one would not have changed the outcome of defendant's trial. Furthermore, even if the jury would have found defendant not guilty on count one, the court could have still used the relevant conduct pertaining to count one to sentence defendant. *See United States v. Watts,* 519 U.S. 148, 156, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (holding that conduct underlying charges for which the defendant has been acquitted may be relied on at sentencing); *United States v. Valdez,* 225 F.3d 1137, 1142–43 (2000). Because defendant is unable to show his defense

was prejudiced by counsel's conduct, he was not subjected to ineffective assistance of counsel pursuant to *Strickland.*

### 2. Failure to Interview and Call Wayne Getman

Defendant also contends he was provided ineffective assistance of counsel because his defense attorney failed to interview and call Wayne Getman as a witness despite defendant's urgencies to do so. Defendant produced an affidavit from Getman indicating he informed defendant of his willingness to testify in his behalf, but he was never contacted by defendant's attorney. Getman's affidavit maintains that he would have challenged the testimony of Lapping and Holmes. Getman's extensive affidavit can be summarized by the following sworn statement, "At no time did I discuss with [defendant] my intent to obtain chemicals or to manufacture methamphetamine. Further, [defendant] was not a party to any discussions between Justin Lapping and myself concerning the purchase of chemicals or manufacture of methamphetamine." (Getman Aff. pg. 4). Getman also states, "[Defendant] has never in any way been involved with me in the manufacture of methamphetamine. Further, I have never discussed the manufacturing process with [defendant], and [defendant] has never done anything to knowingly or intentionally aid or abet me in the manufacturing of methamphetamine." (Getman Aff. at 4).

To counter Getman's affidavit, the government provides that Getman voluntarily signed a plea agreement which implicated defendant as a co-conspirator. Getman's affidavit contends that he indicated to his attorney prior to signing the plea agreement that defendant's name should be removed as he was not involved in the conspiracy. (Getman Aff. at 1). Getman's attorney advised him to go ahead and sign the plea agreement, which he did. (Getman Aff. at 1).

Generally, whether to call a particular witness is "a tactical decision and, thus, a matter of discretion for trial counsel." *United States v. Snyder,* 787 F.2d 1429, 1432 (10th Cir.1986); *U.S.* v. *Watkins,* 2001 WL 1165467, at *4 ("The decision whether to call particular witnesses is the type of strategic choice that falls within the range of reasonableness set forth in *Strickland.*") (citing *Jackson v. Shanks,* 143 F.3d 1313, 1320 (10th Cir. 1998)). Defense counsel's tactical choice not to call Getman is reasonable in light of the fact that Getman signed a sworn representation to the court pointing to defendant as a co-conspirator. Whether Getman told his attorney that defendant was not a co-conspirator is irrelevant to this court's inquiry. Consequently, the court finds defendant's trial counsel did not provide ineffective assistance of counsel in contravention of defendant's Sixth Amendment rights by failing to interview and call Wayne Getman.

### 3. Failure to Present a Defense

Defendant's final allegation of ineffective assistance of counsel involves counsel's failure to present an opening statement or a defense at trial. First, the court notes that failure to present an opening statement, standing alone, does not constitute ineffective assistance of counsel. *See Stouffer v. Reynolds,* 168 F.3d 1155, 1163 (10th Cir.1999). Second, defendant's arguments concerning whether counsel presented a defense essentially reiterate his arguments on the previous two points.

Defendant contends counsel failed to present a defense in that counsel failed to call defendant and Wayne Getman as witnesses. Because the court has already addressed these issues, it will not repeat itself. The court will only add that it is not per se ineffective assistance of counsel for the defense to rest after the government has presented its case. It is a rea-

sonable tactical decision for a defense attorney to thoroughly cross examine the witnesses presented by the government and rest on the defense that the government did not prove the elements of its case beyond a reasonable doubt. After reviewing the transcripts, the court finds counsel adequately cross-examined the government's witnesses and the court also finds it was reasonable for counsel to rest after the government presented its case in light of counsel's limited options regarding availability of credible witnesses.

### C. Calculation of Drug Quantity Attributable to Defendant

 Defendant's final challenge is that the court erred in reaching the drug quantity attributable to defendant for purposes of sentencing. Prior to sentencing, defendant filed objections to the pre-sentence investigation report's ("PSI") approximation of drug quantity. On the day of the sentencing, however, defendant withdrew the objection. (Sentencing Hr'g Tr. at 2–3). Defendant did not challenge the drug quantity on appeal, rendering the claim procedurally defaulted. *United States v. Khan*, 835 F.2d 749, 753 (10th Cir.1987) (holding that a § 2255 motion cannot be used "to test the legality of matters which should have been raised on appeal."). Defendant, however, argues that his attorney's failure to raise the issue on direct appeal constituted ineffective assistance of counsel, thus providing cause for the procedural default.

 As mentioned previously, an attorney's error provides cause to excuse a procedural default only if the error amounts to constitutionally ineffective assistance of counsel pursuant to *Strickland*. *See Coleman v. Thompson*, 501 U.S. 722, 753–54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Once again, to establish ineffective assistance of counsel, a defendant must show (1) counsel's representation was defi-

cient and (2) that this deficiency prejudiced defendant's defense. *See Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052.

 When a defendant alleges his appellate counsel failed to include an issue on direct appeal, the merits of the omitted issue must first be evaluated. *See Cook*, 45 F.3d at 392. While defendant argues that the court erred in assessing the quantity of drugs attributable to him, he concedes that even if the court had concurred with his expert and found the quantity was half of that alleged by the government, defendant's sentence would not have changed. (Mem. in Sup. of Pet. at 51). Based on that admission, even if counsel would have included the quantity issue on direct appeal, his efforts would have been fruitless. Therefore, not only did appellate counsel act reasonably, defendant did not suffer prejudice. Consequently, defendant has not demonstrated ineffective assistance of counsel as cause and his claim as to drug quantity is procedurally barred.

## IV. CONCLUSION

The court finds defendant is not entitled to relief. Defendant's *Apprendi* claims are rejected as they are procedurally barred. Defendant's claims that he was provided ineffective assistance counsel because his counsel refused to allow him to testify, refused to call Wayne Getman as a witness, and failed to put on a defense are without merit. Finally, defendant's assertion that the trial court erred in assessing drug quantity is procedurally barred. For these reasons, defendant's motion pursuant to 28 U.S.C. § 2255 will be denied.

**IT IS THEREFORE BY THIS COURT ORDERED** that the defendant's motion pursuant to 28 U.S.C. § 2255 (Doc. 250) is denied.